MILLER TRANSPORTERS, LTD., et al. *v.* ESPEY, et al.

No. 43559 June 7, 1965 176 So. 2d 249

440

*Floyd, Cameron, Deen & Prichard,* Meridian; *Warner Beard, Jr.,* Laurel, for appellant, Miller Transporters, Ltd.

*Snow, Covington, Shows & Watts,* Meridian, for appellant, Dixie Highway Express, Inc.

*Huff, Williams, Gunn, Eppes & Crenshaw,* Meridian, for appellees.

Jones, J.

Mrs. Madeline H. Espey and her two minor children, Timothy and Salina, who sued by their mother as next friend, being the sole heirs at law of Harmon C. Espey, deceased, filed suit in the Circuit Court of Lauderdale County, Mississippi, to recover damages for the alleged wrongful death of the said Harmon C. Espey, husband and father. The defendants were Miller Transporters, Ltd., a corporation, Dixie Highway Express, Inc., a corporation, and C. L. Brown, an individual. From a judgment in the amount of $60,000, Miller Transporters, Ltd., and Dixie Highway Express, Inc., appeal to this Court. The other defendant, Brown, paid the sum of $5,000 into the registry of the court and does not appeal, so the case is here with Miller Transporters, Ltd., and Dixie Highway Express, Inc., as appellants, and the Espeys as appellees. We are reversing the case and entering judgment here for Dixie Highway Express, Inc., and as to Miller Transporters, Ltd., we are reversing the case and remanding for a new trial.

For brevity, we shall hereinafter refer to Miller Transporters, Ltd., as Miller; Dixie Highway Express, Inc., as Dixie; and Brown as Brown.

The tragedy occurred on the morning of October 25, 1963, on U. S. Highway 11 approximately two miles north of Enterprise, Mississippi, between Enterprise and Meridian and in the area of the Chunky River.

Brown and the deceased were carpenters, both employed at the time at Stonewall, Mississippi, and were on their way to work. They were riding in Brown's

pickup, Espey being his guest. As they approached what is known as the "slough" bridge just north of the Chunky River bridge, and while traveling south, it was claimed by Brown that a large truck and tank of Miller passed his (Brown's) pickup while the said truck was traveling at a high rate of speed, then cut immediately in front of Brown's pickup and stopped so suddenly and without warning that Brown was unable to prevent his pickup from running into the rear of Miller's truck. In attempting to dodge and after hitting the back of Miller's truck, the said pickup was thrown across to the east side of the said highway and in the north lane thereof. At the time, both Brown and Miller were traveling south on the west or southbound lane. Miller's truck is shown to have stopped before entering upon the "slough" bridge, which was a one-lane bridge, in order to permit the tractor and trailer of Dixie, which was approaching from the south and had already entered upon the bridge, to clear same. When Brown's pickup was, as aforesaid, thrown, knocked or swerved into the north-bound lane of traffic, the truck of Dixie smashed into the righthand side of Brown's pickup about the door thereof and knocked and dragged the said truck a distance of 72 feet, as a result of which Espey was killed.

## DIXIE HIGHWAY EXPRESS

We shall first discuss the case with reference to Dixie. Dixie was traveling north at the time, its vehicles being a tractor and trailer; the trailer was loaded and the entire unit and load weighed about 40,000 pounds. Dixie's driver was familiar with the portion of the road in question; he knew there was a one-lane bridge and that the speed limit over said bridge and in that area was 25 miles per hour. The driver of Dixie's tractor testified that as he approached the Chunky River bridge, which was a short distance south of the "slough" bridge, he had to stop before entering the river bridge because

of some vehicles being then on the bridge and had to wait for them to drive off the bridge; that after they had passed over the bridge, he started forward at a slow rate of speed and as he approached the "slough" bridge, saw the Miller truck and trailer; that some distance behind the Miller truck he had seen the pickup belonging to Brown. However, as they approached the "slough" bridge, Miller and Brown were on a more or less straight stretch of the road and the pickup was obscured by Miller's truck and trailer, which was between Dixie and Brown.

The driver further said that he was driving about 20 and not over 25 miles an hour as he crossed over the bridge; that when he got along where the front of his truck was about the center of Miller's tank, the pickup suddenly came from behind Miller's truck and directly across Dixie's lane of travel; that he, the driver of Dixie's truck, immediately applied the brakes of his trailer; that he could not apply the brakes of the tractor and trailer at the same time, or the brake of the tractor first, because of the danger of "jackknifing" the unit; that before he could apply the brakes on the tractor, the collision occurred and Espey was killed.

 █ The only intimation of any negligence whatsoever on the part of Dixie is by a witness, Murphy, a traveling man from Atlanta, Georgia. He testified that he was familiar with this area of road from frequently traveling same; that he was some distance behind Brown's pickup truck; that he was coming toward a curve and could look across a field probably a half mile and see the "slough" bridge; that he saw the truck of Dixie approaching from the south and crossing the "slough" bridge, and that the said Dixie truck was either upon or about the bridge when he saw it. Since the accident happened just a few feet north of the "slough" bridge, Murphy could only have seen the Dixie truck for a very few seconds before the accident.

On cross-examination, attorneys for plaintiff drew from the said witness Murphy a reluctant and hesitant estimate, which could only be a guess, that the Dixie truck was traveling at a rate of probably 35 miles per hour. This is the only evidence of any kind tending to show negligence on the part of Dixie.

This evidence was so unsatisfactory as, in our opinion, not to amount to more than a scintilla. Therefore, we hold that no negligence on the part of Dixie was shown. And, in addition, if it could be said that Dixie was actually traveling faster than 25 miles per hour, then we are met with the fact that the speed was not a proximate cause of the accident. Y. & M. V. R. R. Company v. Green, 167 Miss. 137, 147 So. 333 (1933); Bufkin v. L. & N. RR. Company, 161 Miss. 594, 137 So. 517 (1931).

We are reversing the case as to Dixie and entering judgment here for the said appellant. Its request for a peremptory instruction should have been granted.

## MILLER TRANSPORTERS, LTD.

Both Miller's driver and Brown were likewise familar with this area; both knew that there was a speed limit of 25 miles per hour; both knew that the bridge was a one-lane bridge.

Brown testified that as he and Espey were traveling south, at about 40 miles per hour, in a curve north of the "slough" bridge, Miller's truck pulled over into the northbound lane and passed the pickup at a fast rate of speed, immediately cut back in front of the pickup, and without giving any signal seen by Brown, stopped at a distance shown later to be within 57 feet of the bridge, that is, the front of Miller's truck was within 57 feet of the "slough" bridge. Brown also testified that he had been slowing in order to gain distance between him and Miller; that he saw no stop signal given by Miller; that Miller, instead of cautiously and slowing stopping, suddenly stopped so that he, Brown, was un-

able to stop; that he swerved somewhat to the left to miss the Miller truck; that he hit some part of the Miller truck and remembered nothing thereafter until sometime after the accident.

Miller's driver denied that he had passed Brown in the curve; denied that he was going at a fast rate of speed and that he stopped suddenly. A picture taken after the Miller truck had stopped showed two of the rear lights thereon burning. Miller's driver claimed he had given a signal that he would stop, but Brown said he did not see it. The driver of Dixie said that Miller stopped slowly, and at the time of the accident had just stopped or was rolling very slowly.

The witness Murphy testified that Miller slowed down and made a careful stop.

 ██ The record in this case shows a total of 78 pages of instructions, including eight refused instructions, two of which were requests for peremptories. Of course, there were four parties to this suit; each had its own attorneys; and each party requested its own instructions. Nevertheless, it would seem that by cooperation between the defendants many of them could have been eliminated. So many instructions are bound to have confused the jury. This is particularly true in view of the following instruction given the plaintiff:

> The Court instructs the jury to return a verdict for the Plaintiffs and such verdict shall be against such of the defendants as you may believe from a preponderance of the evidence were guilty of negligence proximately contributing to Harmon C. Espey's injury and death.

The giving of this instruction was reversible error. In a case of this kind, plaintiff is not entitled to a peremptory instruction unless the court can properly designate the defendant or defendants who are liable to the plaintiff. The instruction requires the jury to find for the plaintiff and then states that they shall find

against such of the defendants as they believe guilty of negligence contributing to the decedent's injuries and death. The evidence was in sharp conflict as to whether Miller was liable to the plaintiffs, and it was entitled to a trial without being confronted with the peremptory instruction for the plaintiff.

If the plaintiff is entitled to a peremptory instruction, it should appear from the evidence as to which defendant or defendants is guilty of negligence proximately contributing to his injury, and such an instruction should not be given directing the jury to find somebody among the defendants who should pay. We have been unable to find any case where such an instruction has been given.

The court should not burden any one of a number of defendants whose liability or non-liability depends upon how the conflicts in evidence are resolved with an instruction telling the jury to find for the plaintiff unless the court can designate which defendant is liable. In this case, it was impossible to single out any of the three defendants as being liable because the conflicting evidence made a jury issue as to the liability of each of them, except Dixie. No case directly in point has been cited by either party, and it is doubtful if this kind of instruction has come before a court in the past. We hold that plaintiff is not entitled to a peremptory instruction unless and until the court can designate which defendant is liable as a matter of law. The instruction is calculated to confuse the jury because it tends to place all of the defendants in the same category.

██ █ Appellees contend that error, if any, in this instruction was cured by one given on the form of the verdict. The first instruction given on the form of the verdict had reference to a verdict against all of the defendants, and the other instruction reads as follows:

The Court instructs the jury for the plaintiffs that if your verdict is against only one or two of the defendants, the form of your verdict may be:

"We, the jury, find for the plaintiffs against the defendant(s)_____and _____ and assess the damages at $_____."

You will write your verdict on a separate sheet of paper and not use this sheet for your verdict.

Reading this instruction with the peremptory instruction tends to support Miller's argument that the peremptory required finding against more than one of the defendants.

██ ██ In spite of the fact that the court had peremptorily instructed the jury to find for the plaintiff, there was given an "unavoidable accident" instruction, reading as follows:

The Court instructs the jury for the defendant, Miller Transporters, Ltd., that an unavoidable accident is an occurrence not contemplated by either party, and which occurs without fault or negligence of either. In the event that a party is injured and as a result of said injuries dies in an unavoidable accident, as herein defined, he or she has no right to recover damages from any other party to the accident, since the law requires that negligence of the defendant be proved in order to confer any right to recover damages from the defendant.

Of course, this instruction would conflict with the peremptory instruction and further confuse the jury.

██ ██ Miller complains of an instruction containing, among other things, the statement that the decedent was not guilty of negligence. We think this part of the instruction was all right, but it should have stopped at that point.

The instruction on page 453 of the record is attacked. The first sentence of this instruction reads: "The Court instructs the jury for the plaintiffs that Maurice F. Windham, in driving the Miller unit was under a duty not to pass the Brown pickup unless and until said movement could be made with reasonable safety. . ."

This was an assumption that he had passed the Brown pickup, but such was a disputed issue of fact. The instruction is confusing in that the latter part thereof is not correctly connected.

██ ██ The instruction on page 454 criticized by Miller assumes that the driver of the Miller unit failed to keep a reasonable lookout to the rear of his tractor and trailer. This was a question for the jury.

██ ██ There was no error in refusing the instruction requested by Miller, shown on page 484 of the record. Substantially the same matter was submitted in another instruction on page 476, but the last sentence of the one on page 484 was confusing. ██ ██ Defendant complains of the refusal of an instruction copied on page 485 of the record, but this instruction was properly refused because it required that before the jury could return a verdict for the plaintiff, it must believe that the driver of the Miller unit passed the pickup truck, when such passing was not essential to a recovery.

For the reasons stated, the case is reversed and remanded for another trial as to the defendant Miller.

Reversed and judgment here for Dixie Highway Express, Inc. Reversed and remanded for another trial as to the defendant Miller Transporters, Ltd.

*Ethridge, P. J., and Gillespie, Brady and Smith, JJ.,* concur.